LAMBERT POND

*v.*

JULIATHER E. ENNIS *et al.*

1. DECREE—*party served by wrong name, though an infant, bound by.* Where the real party in interest and the one intended to be sued is actually served with process in the cause, even though under a wrong name, he must take advantage of the misnomer by plea in abatement in such suit, and if he does not he will be concluded by the judgment or decree rendered, the same as if he were described by his true name. And this rule applies as well to infant as adult defendants.

2. In a suit to foreclose a mortgage against the infant heirs of the mortgagor, one of the heirs was described in the proceedings and process by the name of *Collin*, when, in truth, her name was *Juliather Eoline.* The summons was served on her by the first name, and a guardian *ad litem* was appointed for her, who neglected to plead the misnomer, and a decree of foreclosure and sale was rendered, under which the mortgaged premises were sold and conveyed: *Held*, that Juliather Eoline was concluded

342      Pond *v.* Ennis *et al.*      [Sept. T.

Opinion of the Court.

by the record of the decree and sale, the same as though her proper name had appeared therein as a defendant.

3. Same—*party may be connected with record by proof aliunde.* Where a party is sued by a wrong name, and suffers a judgment or a decree to be taken against him by such name, he may be connected with the suit by proper averments, and when such averments are made and proved, the party intended to be named in the judgment or decree is affected thereby as though he were properly named therein.

Appeal from the Circuit Court of Peoria county; the Hon. Sabin D. Puterbaugh, Judge, presiding.

Messrs. McCulloch & Stevens, for the appellant.

Messrs. Wead & Jack, for the appellees.

Mr. Chief Justice Breese delivered the opinion of the Court:

This was an action of ejectment, in the Peoria circuit court, brought by Juliather Eoline Moffitt against Lambert Pond, for the recovery of one undivided one-sixth interest in fee simple, in the south-east quarter of section 17, town. 11 north, range 9 east, in Peoria county. A verdict was found for the quantity demanded. A new trial was granted under the statute, and at a subsequent term the marriage of plaintiff with Ezekiel Ennis was suggested, and he was admitted as a plaintiff, and leave was given to file an additional count to the declaration, setting forth the claim of plaintiff as five thirty-sixths of the premises.

The jury found for the plaintiff, as claimed, whereupon the plaintiff remitted so much of the verdict as exceeds one-seventh of the premises, and agreed that judgment should be entered for an undivided one-seventh, which was accordingly done. To reverse this judgment the defendant appeals.

The only point of any importance arising on the record is, the ruling of the court in excluding the record of certain proceedings in chancery to foreclose a mortgage on this tract of land, executed by the father of the plaintiff, in his lifetime,

under whom she claims as a devisee. The defendant claims title under these proceedings, and his title is not questioned except as to the interest claimed by the plaintiff.

It is contended she was not a party to the foreclosure proceedings, and therefore not concluded by them.

The facts are briefly these : One Neal held a mortgage on the land, to secure the payment of one thousand dollars, executed by Abner Moffitt, the father of appellee, dated July 6, 1857, the date of the note, which was payable one year after date. Abner Moffitt died January 21, 1858, after making a will, by which he devised this tract of land to his widow, Julia Ann, and his children, of whom appellee was one, the second, then aged six years. After his death another child was born, but soon after died.

Julia Ann, the widow, on the 7th of August, 1858, presented her petition to the probate court of Peoria county, to be appointed administratrix, in which she states the names and ages of the children left by the intestate, of whom there were five born in his lifetime, and a posthumous child, then three months old. The petition was signed by the mother, and one of the children, the second oldest, is named in the petition *Collin Moffitt.* The petition was sworn to by one Hugh Moffitt.

After her appointment as administratrix, she filed her petition to the county court, sitting in probate, for an order to sell the real estate of the intestate, which was the land in controversy, to which the children of the intestate were made defendants, the second in years being named therein as Juliather, the plaintiff in this ejectment.

The sheriff returned upon the summons issued against them, in which they were described as the minor heirs of Abner Moffitt, deceased, that he had served it upon all of them, describing plaintiff as Eoline Juliather.

In the proceedings to foreclose the mortgage she is named as Collin.

344　　　　　　　Pond *v.* Ennis *et al.*　　　　[Sept. T.

Opinion of the Court.

The only question of any importance raised on this record is, was the appellee a party to the foreclosure proceedings by service of process upon her? Did she have legal notice of the proceedings to foreclose this mortgage executed by her father in his lifetime, under whom she claims? Of this there can be no reasonable doubt.

The sheriff who served the summons, testifies that he served it upon all the children as they were pointed out to him by the mother, and left with them copies. It is entirely immaterial by what names they were sued and summoned, the essential question being, were the persons interested served with process? Names are nothing. The gist of the matter is, were the parties in interest actually served. If the real party is served, even under a wrong name, he must take advantage of that on the trial. And this rule applies as well to infants as to adults. The infant was a party, and a guardian *ad litem* was appointed to defend her interests. He could and should have pleaded the misnomer; but failing to do so, and a decree taken against her by a wrong Christian name, can never be questioned on that score at any future time. An infant in court has no more or greater rights than an adult.

A decree against an adult by a wrong name would attach to him through all time, and there is no remedy. So with an infant. This is clearly the doctrine, as recognized by this court in *Guinard* v. *Heysinger*, 15 Ill. 288. In an action on a judgment the defendant can not interpose any defense which he might have made in the original suit. Here, in the suit to foreclose, this plaintiff, sued by a wrong name, should have interposed the proper defense. This decree of foreclosure was as valid and binding on this then infant as on an adult, and it is too late now to say her name is Juliather Eoline, and not Collin. What matters it, it may be asked, what her real name is? Did the proper person have notice, by summons, of these proceedings? If testimony of a disinterested witness is to be believed, she did have such notice. A guardian *ad litem* was appointed for her, and no defense was made. The

matter has become *res adjudicata,* and the misnomer can not
be available for the purposes of this recovery.

A respectable writer, treating on this subject, says, the
persons who are directly parties to a judgment can generally
be ascertained by an inspection of the record. But this is
not always the case. It may happen that the name of some
of the parties is incorrectly stated. The weight of authority
is. if the writ is served on a party, by a wrong name, intended
to be sued, and he fails to appear and plead the misnomer in
abatement, and suffers judgment to be obtained, he is con-
cluded, and in all future litigation may be connected with the
suit or judgment by proper averments; and when such aver-
ments are made and proved, the party intended to be named
in the judgment is affected as though he were properly named
therein. Freeman on Judgments, sec. 154, page 125. Refer-
ence is made to the case cited from 15 Ill. *supra,* to *National
Bank* v. *Jaggers,* 31 Md. 38 ; *Ins. Co.* v. *French,* 18 Howard
(N. S.) 404; *Smith* v. *Bowker,* 1 Mass. 76 ; *Oakley* v. *Giles,* 3
East, 167 ; *Smith* v. *Patten,* 6 Taunton, 115 ; *Crawford* v.
*Satchwell,* 2 Strange, 1218.

We have examined the cases to which reference is made,
and believe they support the text. *Crawford* v. *Satchwell,* 2
Strange, 1218, was an action of trespass and false imprison-
ment, brought by the plaintiff in the Christain name of *Archi-
bald* Crawford. The defendant justified under a *capias ad
satisfaciendum* upon a judgment against *Arthur* Crawford, and
averred that the plaintiff in this action was the same person
who was sued by the name of *Arthur;* and, on demurrer, the
court held it a good plea, the defendant having missed his
time of taking advantage of the misnomer, which should have
been by pleading it in the first action. In the case of a bond
given in a wrong name, he must be sued by that wrong name,
and the execution must pursue it.

*Oakley, qui tam* v. *Giles,* 3 East, 167, was an action to recover
a penalty under a statute. The defendant was served with
process in the name of William Giles, his true name being

*Edward,* in consequence of which he did not appear ; but the plaintiff afterwards served him with a copy of the declaration by his right name, and proceeded to judgment against him for want of a plea, and sued out execution.   Motion being made to set aside the proceedings for irregularity, the court refused the rule, saying that the defendant, having been the real person served with process, ought to have pleaded in abatement, and could not take advantage of the misnomer in any other manner than that which the law had marked out. If this were allowed, pleas in abatement for a misnomer might be struck out of the books.

*Smith* v. *Patten,* 6 Taunton, 115, (1 Eng. C. L. R. 350,) was, where the defendant was sued by a wrong name, and omitted to plead it in abatement, and suffered judgment to be entered against him, though he had not appeared to the wrong name. It was held, as the defendant might have pleaded in abatement, and not having availed of that opportunity, he could not now come to set aside the proceedings, the court saying, it would be of the worst consequence if defendants should be permitted to lie by and increase expenses, and then move to set aside the proceedings.   The rule was discharged.

In *Smith* v. *Bowker,* 1 Mass. 76, the court announce the same doctrine, citing with approbation *Crawford* v. *Satchwell,* 2 Strange, *supra.*

In *The First National Bank of Baltimore,* garnishee, etc., of *W. B. Lounsbury* v. *Jaggers,* 31 Maryland, 38, it appeared the true name of the defendant in the judgment, the party intended to be sued and upon whom the writ was served, was *Wales* B. and not *William* B. Lounsbury ; and it was insisted that, the judgment being against *William,* the attachment could not bind the assets or credits of *Wales.* ` The court say : there is no doubt that when a party is sued by a wrong name, and he appears to the suit and does not plead the misnomer in abatement, and judgment is rendered against him in the wrong name, execution may be issued upon it in that name, and levied upon the effects and property of the real defendant.

But the court say, there is some conflict in the decisions whether the same result will follow if he does not appear, and the judgment is obtained by default. But the weight of authority is, that this makes no difference, and if the writ is served on the party intended to be sued, and he fails to appear and plead in abatement, and suffers judgment to go by default, he is concluded, and in all future litigation may be connected with the suit by proper averments. The cases *supra* are cited with approbation, as sustaining this doctrine.

The same doctrine is announced in *The Lafayette Ins. Co.* v. *French,* 18 Howard, (U. S.) 404, where the company had been sued by a wrong name, but had neglected to plead the misnomer in abatement.

In *Stearlie* v. *Reed, Admr.* 2 Wash. Cir. C. Rep. 274, it was held a mere misnomer was not sufficient to exclude the record of such a judgment from being given in evidence, if, in point of fact, the party appeared by a wrong name, and, instead of pleading the misnomer, went to issue on other points, and judgment was given against him. The true name of the administrator was Joseph Reed, and the proceedings were against James Reed, administrator. An appearance was entered for the administrator by the name of James Reed, and a regular plea put in in that name. The court ask, can there be any doubt that this evidence fully supports the averment that Joseph Reed, the defendant in this suit, and James Reed, the defendant in the writ of error, are one and the same? The surname is the same, the description of character is the same, but the Christian name is mistaken.

We are at a loss to perceive any substantial difference between the case before us and those cited.

The fact that appellee was an infant at the time the process was served upon her, can not affect the principle. An infant is as much bound by the rules of law and of pleading as an adult, and this infant enjoyed the protection of the court, who appointed for her a guardian to protect her interests, and who could have availed of the misnomer by plea in abatement.

There can not be a particle of doubt that the plaintiff in this ejectment was the person made a party in the foreclosure proceedings, and was duly served with process, and a copy left for her, though by a wrong Christian name. This error, according to the authorities cited, can not be availed of in any subsequent proceeding. By this service, the court obtained jurisdiction of her person, and she can not now allege a misnomer. In such a case the Christian name is nothing. Appellee was one of the devisees under her father's will; as such she was notified of the proceedings, and this is all the law requires. She, the party in interest, had actual, legal notice, by summons, duly served upon her. No plea in abatement for misnomer was put in, but judgment went against her, the real person, by the wrong Christian name. This did not vitiate the proceedings, and she must be held to be concluded by that judgment.

The court erred in excluding the record of the proceedings in the foreclosure suit, for the reason alleged, and for this error the judgment is reversed, and the cause remanded for further proceedings consistent with this opinion.

*Judgment reversed.*