[No. 5148.]
[No. 2743 C. A.]

SOLMONOVICH ET UX. V. THE DENVER CONSOLIDATED TRAMWAY COMPANY ET AL.

1. **Corporations—Consolidation—Status—Actions Against—Statutory Construction.**

Section 628, Mills' Ann. Stats., authorizing the consolidation of corporations, provides that, when certain conditions have been complied with, the directors of the consolidating companies shall

transfer all property to the consolidated company; that the directors of the latter company shall call in and cancel all the stock of the former companies, and issue in lieu thereof the stock of the new company; that, when so consolidated, the stock of the old companies, whether surrendered or not, shall thereafter represent only its interest in the new organization; and that the latter shall be responsible for, and shall assume and pay, all the just liabilities of the former. Held, that after consolidation in accordance with these provisions the old companies cease to exist, and they are not kept alive by § 630, which provides that such consolidations shall not affect suits pending in which such corporations shall be parties, nor shall such change affect causes of action or the rights of parties in any particular, nor shall suits brought against such corporations by its former name be abated; that, if the new company does not want judgment taken against it in a pending suit against the old, it must defend the action, as the suit will not abate; and that, as to causes of action against the old companies upon which suit has not been brought, the new company should be made defendant.—P. 290.

2. Practice in Civil Actions—Pleading—Amendments—Parties— Mistake in Name—Statutory Construction.

After the consolidation of two corporations, in accordance with § 628, Mills' Ann. Stats., an action was brought against one of the consolidating companies, and service was made upon the person who was its president and who was also the president of the new company. An answer and other pleadings were filed, the attorney appearing for the old company also being attorney for the new. The defendant's counsel called attention to the fact that the wrong company was named in the complaint, and, in consideration of a continuance, agreed that the complaint could be amended by substituting the new company for the old; but this not being done at the time, plaintiff later moved to amend the title in this particular. Held, that since the summons was served upon the president of the new company, although as president of the old, and the attorney of the new company filed the answer and other pleadings, although in the name of the old company, since the old company ceased to exist after the consolidation by virtue of the statute, such persons were not officers of the old company but of the new, and the latter must be presumed to have had notice of the action; and since the averments of the complaint showed that the injuries were inflicted after the consolidation, and that, instead of moving by proper motion to quash the summons or the return, the new company, through its president and general attorney, caused an answer to the merits

to be filed, and later motions to elect and for a bill of particulars, it must be held, it being the real party in interest, to have appeared in the suit in which it was sued by a wrong name, and an amendment changing the name of the party defendant vas allowable under § 75, Mills' Ann. Code.—P. 293.

3. **Practice in Civil Actions—Oral Stipulation Not Made in Open Court—Amendment as to Parties.**

A rule of court that oral agreements will not be enforced unless made in open court, does not interfere with the allowance of an amendment as to parties where the prior agreement of counsel to that effect was testified to before the court, and was not in dispute.—P. 295.

*Appeal from the District Court of Arapahoe County. Hon. Peter L. Palmer, Judge.*

Action by Orley Solmonovich and Minnie Solmonovich against The Denver Consolidated Tramway Company and The Denver City Tramway Company. From a judgment of dismissal, plaintiffs appeal.                     *Reversed and remanded.*

Mr. HENRY COHEN and Messrs. PATTERSON, RICHARDSON & HAWKINS, for appellants.

Mr. CHARLES J. HUGHES, Jr., for appellees.

CHIEF JUSTICE STEELE delivered the opinion of the court:

On July 11, 1900, the appellants (plaintiffs below) filed in the district court of Arapahoe county their complaint against The Denver Consolidated Tramway Company, charging that on the 27th day of February, 1900, the defendant wrongfully, negligently and unskillfully ran one of its trains of cars, then and there owned and operated by it, and being run on what is known as the Larimer street line, over, upon and against one Jacob Solmonovich, who was of the age of seven years, and who was crossing said street car line, bruising, wounding and mangling him so that shortly thereafter, to wit, on February

28, 1900, he died from the result of said injuries; that the plaintiffs are respectively father and mother of said deceased, and that by the said wrongful death of their said son they have been damaged in the sum of five thousand dollars.

The summons was served upon Rodney Curtis, as president of The Denver Consolidated Tramway Company.

On July 30th, The Denver Consolidated Tramway Company filed its answer, in which it denied each and every allegation of the complaint, for a first defense, and, for a second defense, stated that it was not guilty of negligence, and charged contributory negligence on the part of the child and also on the part of the plaintiffs.

July 31, 1900, replication was filed. October 3, 1900, the defendant, by its attorney, moved for an order requiring the plaintiffs to elect upon which allegation of negligence they intended to rely, and, on the same day, the defendant moved the court for an order requiring the plaintiff to file a bill of particulars with the complaint, and to make said complaint more particular. On January 16th, defendant's motion to require the plaintiffs to elect and for a bill of particulars was heard and denied. On March 4, 1902, the plaintiffs moved the court to amend the title of the cause by changing the name of the defendant company from The Denver Consolidated Tramway Company to The Denver City Tramway Company, and as grounds of the motion stated that at the time of the wounding and killing of plaintiffs' son, as set forth in the complaint, the car and line mentioned were run and operated by The Denver City Tramway Company, and that plaintiffs made a mistake in the name of said corporation, setting it forth as The Denver Consolidated Tramway Company; that after the cause had gotten to issue,

it was agreed between plaintiffs' attorneys and the then attorney for the defendant, The Denver City Tramway Company, that the mistake in the name might be corrected on the trial of said cause, and that the defendant, The Denver City Tramway Company, would take no advantage of said mistake, said agreement being made in consideration of an extension in reference to the trial of said cause; and that, relying upon said agreement, plaintiffs' counsel have so acted ever since; that if said change is not now made that injustice will result to the plaintiffs, as it is now too late, because of the statute of limitations, to institute any new action; that the said The Denver City Tramway Company has known at all times that it was the party that was sued, and that the service of process was made on its president, and that there was no such corporation doing business, at the time of the institution of said suit and the service of said summons, as The Denver Consolidated Tramway Company.

Testimony was taken and the said amendment allowed, the attorneys appearing for the defendant resisting the application to amend. Thereafter, and on March 24th, The Denver City Tramway Company, appearing specially, moved to set aside the order permitting the amendment. The motion was supported by affidavit, counter-affidavits were filed, and thereafter the court granted the motion to set aside the order, and plaintiffs' attorneys announcing that they had no cause of action against The Denver Consolidated Tramway Company, and that the only cause of action they had was against The Denver City Tramway Company, it was ordered that the action be dismissed and that the defendant, The Denver Consolidated Tramway Company, do have and recover its costs, and the court ordered that The Denver City Tramway Company go hence with-

out day and that it recover of plaintiffs its costs. From which orders the plaintiffs prayed an appeal to the court of appeals.

It appears from the record and bill of exceptions that The Denver Consolidated Tramway Company was formed by the consolidation of The Denver Tramway Company and The Metropolitan Railway Company, September 6th, 1893; that Rodney Curtis was the president of The Denver Tramway Company, and, after the consolidation, became the president of The Denver Consolidated Tramway Company; that The Denver City Tramway Company was formed by the consolidation of The Denver Consolidated Tramway Company and The Denver City Traction Company on the 3rd day of March, 1899; that Rodney Curtis was the president of The Denver Consolidated Tramway Company, and after the consolidation became the president of The Denver City Tramway Company.

It further appears that The Denver Consolidated Tramway Company did not operate the line of railway known as the Larimer Street line, and that it was operated by The Denver City Tramway Company; that Rodney Curtis was the president of The Denver City Tramway Company at the time of the service of summons; that A. M. Stevenson, Esq., was general attorney of The Denver City Tramway Company, and that at the time the summons was served it was handed to Mr. Stevenson, the company's attorney. It also appears that A. M. Stevenson, the attorney for the company, informed one of the counsel for the plaintiffs, some time before the application to amend, that they had made a mistake in the name of the company, and that if the plaintiffs would grant a continuance for a short time, that he would consent to an amendment of the complaint, with the understanding that the answer filed should

stand as the answer of The Denver City Tramway Company.

Affidavits were filed by certain officers of the tramway company, in which it was stated that The Denver Consolidated Tramway Company and The Denver City Tramway Company are two separate, distinct and independent corporations, that each has suits at law pending in various courts in this state, being separately conducted; that the stockholders and parties interested in these corporations are not identical; that The Denver City Tramway Company had not appeared nor authorized any appearance for it in said action; that no summons was issued against nor served upon any officer of The Denver City Tramway Company, and that said company had not authorized any agent or attorney to appear for it or enter its appearance.

A certificate of the secretary of state, dated November 2, 1901, certifies that The Denver Consolidated Tramway Company has made full payment of all fees prescribed by law to be paid to the secretary of state, and is hereby authorized to exercise any corporate power provided by law.

It also appears that the same counsel who appeared for The Denver Consolidated Tramway Company resisting the application to amend, later appeared as attorneys for The Denver City Tramway Company and moved to set aside the order granting the amendment.

Reliance is placed upon the case *D. & R. G. R. R. Co. v. Loveland,* 16 Colo. App. 146, by counsel for appellee in support of their contention that the court was without authority to permit the amendment substituting the name of The Denver City Tramway Company for that of The Denver Consolidated Tramway Company. In the case mentioned, action was brought against The Denver and Rio Grande

Railway Company. During the trial, it was shown that the road, although formerly the property of the defendant, was, at the time the cause of action accrued, owned and operated by The Denver and Rio Grande Railroad Company. The plaintiffs thereupon asked leave to amend their complaint so as to make the railroad company the defendant in place of the other, alleging that the appellation was a misnomer. The amendment was allowed, but the court of appeals held that the allowance of the amendment was error. In the course of the opinion it was said by Judge Thomson: "If the case were as counsel puts it, the substitution of one name for the other would be an amendment, and a very proper amendment. If the right party is sued by the wrong name, and service of process is had upon him, the true name may be substituted for the other, by way of amendment. But, if one person is sued and brought into court, there can be no legal substitution of another for him, and a substitution, if made, would not be an amendment. In this case there was no misnomer. The Denver & Rio Grande Railway Company was a corporation capable of suing and being sued. An action was brought against it by its own proper name. According to the record, service was had upon it, and, according to the record, service was not had upon the other corporation. The railway company appeared and answered, but there was no appearance for the railroad company. Each corporation was a legal entity, as distinct from the other as John Doe from Richard Roe. *A suit against one was a matter of no concern to the other,* and could not, without the other's consent, be converted into a suit against it."

The abstract proposition of law stated in the opinion is supported by the weight of authority.

The case *B. & M. R. R. Co. in Nebraska v. Burch,*
17 Colo. App. 491, is similar in many respects to the
one at bar.   The defendant named in the action was
The Burlington and Missouri River Railroad Com-
pany in Nebraska.   It appeared that there was no
such corporation as the defendant, but that The Chi-
cago, Burlington & Quincy Railroad Company owned
and operated the railroad known as The Burlington
and Missouri River Railroad in Nebraska.   The
court held that The Chicago, Burlington & Quincy
Railroad Company was liable.

The first case is based upon the proposition that
if there is in existence such a corporation as the de-
fendant, capable of suing and being sued, another
corporation cannot be substituted as defendant by
amendment.   The latter case rests upon the prop-
osition that where there is no such corporation as
the defendant, that the company served with process
and defending, it being the real party in interest,
becomes liable for any judgment rendered, although
the objection that the wrong corporation was sued
might have been good if taken in apt time.   It be-
comes important, therefore, to determine whether at
the time the action was begun there was such a cor-
poration as The Denver Consolidated Tramway
Company.

Our statute, 628 Mills' Ann. Stats., authorizes
the consolidation of corporations whenever three-
fourths of the stock of each of the consolidating
companies votes so to do, and provides that when
certain conditions have been complied with:   ''The
trustees or directors of the consolidating companies
shall, each by proper conveyance, convey to the con-
solidated company the property and effects of such
companies, and shall deposit with the directors of
the consolidated company the property and effects
of such companies, and shall deposit with the direc-

tors of the consolidated company all the transfer books, seals, books and papers of each of the companies so uniting. The directors of the consolidated corporation shall call in all the stock of each of the companies forming a part of the consolidation, cancel the same, and issue in lieu thereof the stock of the new organization in proportion of value of the old to the new, as provided in the plan of consolidation. * * * When the companies have consolidated as herein provided, the stock of the companies so consolidated shall thereafter represent only its interest in the new organization, whether surrendered and exchanged or not, * * * and the consolidated company shall be responsible for and shall assume and pay all the just liabilities of each of the companies so consolidated.''

These provisions, in our opinion, completely and effectually destroy the consolidating concerns, and by the consolidation of the old companies into the new, the old companies ceased to exist.

The great weight of authority supports the view that when a new corporation is formed from the consolidation of other companies, as provided by our statute, that the consolidated corporations cease to exist. Mr. Justice Brown, in the case *Keokuk & Western Railroad v. Missouri* 152 U. S. 301, in so holding, used this language:

''It is impossible to conceive of a corporation existing without stock, or certificates representing the interests of the corporators in the organization. Now, if the act provides that these certificates shall be surrendered, and certificates in another company issued in their place, what becomes of the prior companies? Who are their stockholders—who their officers? If the stock in the new company is sold, what interest in the prior companies passes by the sale? There can be but one answer to these ques-

tions.   The property and franchises of the prior
companies are gone as much as if they had formally
surrendered their charters.   The new company may
doubtless receive by transmission from its constitu-
ent companies their property, rights, privileges, and
franchises, including any immunity from taxation;
but it receives them as an heir receives the estate
of his ancestor, or as a grantee receives the estate
of his grantor, by inheritance, succession, or pur-
chase.   The result is not a mere union or partnership
of two companies, nor the merger of the franchises
of one in another, but the extinguishment of one and
the creation of another in its place.''

The provisions of section 630 that such consoli-
dation of one corporation with another, or with
others, shall not affect suits pending in which such
corporations shall be parties, nor shall such change
affect causes of action nor the rights of parties in
any particular, nor shall suits brought against such
corporation by its former name be abated, do not,
in our opinion, have the effect of keeping alive the
corporations formed into a new company by consol-
idation.   The provisions of the statute that the con-
solidated company shall be responsible for, and shall
assume and pay, all the just debts and liabilities of
the companies so consolidated together, with the
provisions of section 630, only strengthen the posi-
tion, it seems to us, that the consolidated companies
are, after consolidation, defunct.   The new com-
pany, as to a pending suit, if it does not want judg-
ment taken, must defend the action, as the suit will
not abate; as to causes of action upon which suit has
not been brought, the new company may be made
defendant, for if the old company must be made de-
fendant, it is difficult to see how service could be
obtained or how provision could be made to defend.
There being no stockholders or officers or property

or effects, there is no corporation, and the new organization, created by the death of the old companies, is the only organization against which suits can be brought. The case seems to us to fall under the rule announced by Judge Thomson in *D. & R. G. v. Loveland,* that when the right party is sued, but by a wrong name, the amendment may be made. In this case the right party was sued by the wrong name, and service was made upon the right party, though by the wrong name. Although the summons was served upon Rodney Curtis, as president of The Denver Consolidated Tramway Company, the record shows that Rodney Curtis was president of The Denver City Tramway Company, and, as The Denver Consolidated Tramway Company had ceased to exist, he was not its president.

The attorney who appeared and filed the answer was the attorney of The Denver City Tramway Company, and was not the attorney of the company named as defendant, for the reason that the company was defunct. The Denver City Tramway Company must be held to have had notice that the cause of action was not against the old company, because the averments of the complaint showed that the injuries complained of were inflicted by The Denver City Tramway Company, and not by The Denver Consolidated Tramway Company; and when, instead of moving by proper motion, or by making proper plea, to quash the summons or the return thereof, The Denver City Tramway Company, through its president and general attorney, caused an answer to the merits to be filed, and later moved to require plaintiffs to elect, and again for a bill of particulars, it must be held, it being the real party in interest, to have appeared in the suit in which it was sued by a wrong name, and an amendment changing the name

of the party defendant was allowable under section 75 of our Code.

In *Pennsylvania Company v. Sloan,* 125 Ill. 72, an amendment was made, and the court sustained the action in allowing it, although many years had elapsed between the time of the bringing of the suit and the allowance of the amendment. Suit was brought against The Pittsburgh, Fort Wayne and Chicago Railroad Company, an amendment was permitted changing the name of the defendant to that of The Pennsylvania Company. The court said: "The law undoubtedly is that, where the real party in interest and the one intended to be sued is actually served with process in the cause, even though under a wrong name, he must take advantage of the misnomer by plea in abatement in such suit; and, if he does not, he will be concluded by the judgment or decree rendered the same as if he were described by his true name.—*Pond v. Ennis,* 69 Ill. 341. If the Pennsylvania company was the real party sued and served, though by the wrong name, it should have pleaded the misnomer in abatement. It did not do so. The first plea filed was to the merits."

Moreover, the record discloses that the attorney for The Denver City Tramway Company called the attention of counsel for the plaintiffs below to the fact of the misnomer, and in consideration of a continuance agreed that the amendment might be made and that the answer filed would stand as the answer of The Denver City Tramway Company. Mr. Stevenson, when called as a witness, said: "My recollection is—I am quite clear about that—that he was to amend by interlineation, and my answer was to stand as an answer to the complaint as amended, and we would make a formal order when we came into court."

The rule of the district court that oral agreements will not be enforced unless made in open court does not interfere with the allowance of the amendment here proposed, for the reason that the agreement of counsel was not in dispute and was testified to before the court.

Authorities have been cited holding that an attorney's general employment does not authorize an appearance before service, but such are not in point in view of our holding that service of summons was made upon the real party in interest.

For the reasons assigned, the judgment of the district court is reversed, with directions to reinstate the case against The Denver City Tramway Company.                                           *Reversed.*

Mr. JUSTICE CASWELL and Mr. JUSTICE MAXWELL concur.