CORNWELL, Administrator, Appellant, v. SURETY FUND LIFE COMPANY, et al., Respondents.

(184 N. W. 211.)

(File No. 4884.   Opinion filed August 18, 1921.)

1.  Insurance—Life Insurance—Administrator's Claim For Nonexempt Insurance Money, Estate Insolvent, Alleged Fraud to Creditors Re Premium Payment, Widow Co-defendant—Policy Reserving Cash Surrender Value, Loan Value, Annuity Option, Right to Change Beneficiary, Whether Tantamount to Fraud, Immaterial on Demurrer.

In a suit by administrator against a life insurance company and decedent's widow, to recover for the estate and as against the widow a portion of proceeds of the policy above $5000 exemption; complaint alleging that the estate is insolvent and pending unpaid claims aggregate over $3000, that decedent at date of policy was insolvent and kept in force in his wife's name the policy with his own funds with intent to hinder, delay and defraud creditors who might file claims against his estate as beneficiaries for amount of the policy less $5000 as exempt and that widow claims only the amount exempt; held, on demurrer to complaint as failing to state cause of action, that the fact that the policy reserved to insured a cash surrender value, a loan value, an annuity option and right to change beneficiary, is immaterial, further than that demurrer admits the transaction, to the extent of $5000 of the $10000 insurance, was fraudulent as to creditors.

2. Same—Widow's Conceded Exemption Money From Policy Proceeds Whether Claim Under Either of Two Statutes, is Immaterial.

Where plaintiffs administrator concedes right of widow as beneficiary under decedent's life policy to receive $5000 of the proceeds under the statutes exempting that amount from creditors claims, it is immaterial whether such exemption be claimed under Sec. 2661, Code 1919, providing that any amount of such insurance not exceeding $5000 shall inure to use of surviving widow, or under Sec. 9310, providing that such proceeds to extent of $5000 shall, in absence of agreement or assignment to contrary, inure to use of * * wife * * independently of decedent's creditors. Whether statutory exemptions as proceeds of insurance policies would apply where policy was taken out by insolvent debtor with intent to defraud creditors, not decided, the right of decedent's family to $5000 therefrom being conceded.

3. Same—Amount of Recovery Under Demurrer, Whether for Premiums Paid, or Insurance Money Due, Immateriality of Question.

Held, further, that under the demurrer to complaint, the question whether recovery may be had for the premiums fraudulently paid out, or for insurance money under the policy, is not raised, save as that question may be connected with theory upon which the right to recover may be based; and, the policy containing a provision under which husband might change the beneficiary and assign the policy, which rights were not exercised in favor of his estate, and, defendant company admitting liability to wife as beneficiary, held, that, her right to the fund having become fixed by husband's death, said limitations in the policy do not affect or limit her right to as-

sign her interest therein in whole or in part; this notwithstanding company's contention that no privity existed between it and administrator because its assent to change of beneficiary or an assignment was essential thereunder.

4.  **Same—Action Upon, Not to Set Aside, Insurance Contract—Non-allegation That Wife or Insurance Company Was Party to Insured's Fraud, Contract Valid Re Them.**

Since, in absence of insolvency and fraud on the part of insured, his creditors could have no claim upon proceeds of the life policy, and administrator would have no right of action against either widow or insurance company, and, the action being one upon and not to set aside the insurance contract and recover insurance premiums paid by fraudulent debtor, and, complaint not alleging that either wife or defendant company was party to alleged fraud, as to them the insurance contract was valid.

5.  **Same—Insured's Alleged Fraud to Creditors in Procuring Insurance—Whether Proceeds a Trust Fund for Creditors, In Administrator's Suit—Policy as Instrument Re Trust—Policy or Insurance, Not Premium, Subject of Fraudulent Gift—Diminution of Fund as Basis of Creditors' Claim—Insured's Right to Purchase Reasonable Insurance as Against Creditors, Rule—Distribution of Trust Fund, Insurer's Non-interest In—Federal Decision Distinguished—Wife's Estoppel.**

The relief demanded herein being a decree declaring proceeds of the insurance contract in hands of defendant insurer to be a trust fund for benefit of the guilty insured's creditors, and plaintiff administrator not being an assignee under the policy, and the policy being the instrumentality through which the fund came into defendant insurer's possession, and the complaint proceeding on theory that it was charged with a trust in favor of creditors of insured's estate because of alleged fraudulent intent, etc., **held**, that the nature and form of the conveyance, or ways and means employed in bestowing the gift or donation, is immaterial; that the consideration for the policy moved from insured and not from the beneficiaries; and when premiums are paid out of debtor's fund the transaction is void as against existing creditors; and the policy, or the insurance it represented, is the subject matter of the gift, and not the premium; and the diminution of the fund to which the creditor is entitled to look for payment, gives him the right to complain; hence on death of insured, the insurance became a trust fund for benefit of his creditors, and all parties dealing therewith, with notice, may be held to an accounting. Central National Bank. v. Hume, 128 U. S. 195, 32 L. Ed. 370, distinguished, as not involving a transaction resulting in dimnution of decedent's estate, nor as contributing to his insolvency;

and, if it were assumed, as there **held,** that an insolvent debtor may purchase reasonable amount of life insurance to provide for immediate needs of wife and family in case of his death without wrongful injury to creditors, such doctrine is not applicable here, under a statute exempting a specified amount from proceeds of life insurance; yet **held,** that husband may not with intent to defraud creditors, or voluntarily, give to wife to their prejudice, either by assignment of his policy or by naming her as beneficiary, insurance in an amount exceeding the statutory exemption in her favor; and purchase of such excess insurance by such insolvent from his own funds with intent to hinder, etc., creditors is not less a voluntary gift because of fact that husband is legally bound to support wife and children, or because they have an insurable interest in his life, or because wife had no knowledge of insolvency or fraudulent intent; and any amount of excess insurance thus procured, though standing in wife's name, is a trust fund recoverable by insured's administrator, and insurer is not concerned in probate distribution of such fund.    **Held,** further, that where, as here, wife is party defendant, recovery by administrator under facts alleged herein, would estop her from thereafter making claim against insurer.

Appeal from Circuit Court, Codington County.    Hon. WILLIAM N. SKINNER, Judge.

Action by A. H. Cornwell, as administrator of the Estate of Henry S. Rowe, deceased, against the Surety Fund Life Company, a corporation, and another, to recover a portion of a life insurance fund.    From an order sustaining a demurrer to the complaint, plaintiff appeals.    Reversed, and remanded for further proceedings.

*Hanten & Hanten,* and *A. R. Henrikson,* for Appellant.
*Hall & Purdy,* for Respondent.

(3)    To point three of the opinion, Respondent cited, re right of beneficiary as vested right where insured has not consented to change of beneficiary; Fruend v. Fruend (Ill.) 109 Am. St. Rep. 283.

(5)    To point five, as supporting theory of insured's fraudulent gift as against creditors: Tompkins v. Levy, 87 Ala. 263, 6 So. 346, 13 Am. St. Rep. 31; 20 Cyc. 363.    To point that the "gift" is the gift of the insurance policy; 25 Am. Law Review, 185; Lehman v. Gunn (Ala.) 27 So. 475, 82 Am. St. Rep. 159, 51 L. R. A. 112.

Respondent cited:  Central Nat. Bank of Washington City v. Hume, 128 U. S. 195, 32 L. ed. 370; 25 Cyc. 900.

SMITH, J.  Appeal from the circuit court of Codington county.  On the 9th of April, 1910, the Dakota Western Assurance Company, in consideration of an annual premium of $401.80, issued its policy of life insurance to one Henry S. Rowe in the sum of $10,000, in which his wife, Alice K. Rowe, was named as beneficiary.  Thereafter on March 24, 1916, the defendant Surety Fund Life Company reinsured this policy and assumed all the obligations thereof and agreed to carry out its provisions precisely as though it had been originally issued by the Surety Fund Life Company.  Thereafter the Surety Fund Life Company reinsured said risk to the extent of one-half thereof with the Pittsburgh Life & Trust Company.  The insured died on July 15, 1916, and thereafter the Surety Fund Life Company filed claim against the Pittsburgh Life & Trust Company, and has received payment thereof from the Pittsburgh Life & Trust Company.

The plaintiff, A. H. Cornwell, as administrator of the estate of Henry S. Rowe, deceased, brings this action against the Surety Fund Life Company and Alice K. Rowe, claiming to recover for the benefit of the estate $5,000 of the insurance money due under said policy.  The complaint alleges that no part of the sum due under said policy has been paid by the defendant Surety Fund Life Company except the sum of $3,131.08, paid on the 11th day of June, 1917, to Alice K. Rowe, the beneficiary in said policy.  The complaint further alleges that the estate of Henry S. Rowe, deceased, is without funds and is unable to pay claims filed, allowed, and proved against said estate, aggregating more than $3,000, as well as costs and expenses of administration as yet undetermined.  The complaint further alleges that Henry S. Rowe, at the time of taking out said insurance, was insolvent and unable to pay his debts, when due, and that he secured and kept in force in the name of his wife, Alice K. Rowe, the said insurance policy with his own funds, with intent to hinder, delay, and defraud his creditors of their demands, and to avoid claims and debts due to creditors who might file claims against his estate and—

"that said insurance was effected for the estate of the said de-

ceased as beneficiary for the amount due under said policy in excess of $5,000 as exempt, and the said beneficiary Alice K. Rowe, as wife of the insured, on account of the insolvency of the estate and of the insured at the time the policy was originally issued, and while the premiums were being paid, and admitting the same, makes claim only to the proceeds of said insurance policy exempt under the laws of this state, namely, $5,000, and makes no claim to the balance due on the said policy, and has consented that the balance of the proceeds due on said policy may be used for the payment of expenses of administration and claims allowed against the estate of Henry S. Rowe, deceased," and that defendant has refused payment.

Plaintiff demands judgment against the defendant Surety Fund Life Company for $5,000, with interest, etc. A copy of the policy is attached to and made a part of the complaint. Defendant demurs, setting up four grounds: First, that the complaint does not state facts sufficient to constitute a cause of action; second, that there is a defect of parties plaintiff; third, that the plaintiff has no legal capacity to sue; fourth, that there is a defect of parties defendant.

From an order sustaining this demurrer plaintiff appeals and assigns error. The briefs and argument of counsel are directed mainly to the contention that the complaint does not state facts sufficient to constitute a cause of action. The demurrer admits the allegation of the complaint, that the transaction was carried out by the deceased, then an insolvent debtor, with intent to defraud his creditors.

[1, 2] In oral argument and in briefs filed appellant urges that certain provisions of the policy reserving to the insured a cash surrender value, a loan value, an annuity option, and a right to change the beneficiary, are, in themselves, sufficient to render the transaction fraudulent as against creditors. This contention requires no consideration further than to note that the demurrer admits that the transaction to the extent of $5,000 of the insurance was fraudulent as to creditors. If the alleged fraudulent intent were in issue as matter of fact, these provisions of the policy might become material, but the admission by the demurrer renders them immaterial at this time. The defendant company does not deny, but admits, a liability of $10,000 under the policy.

Plaintiff, appellant here, concedes the right of the wife as beneficiary to receive $5,000 of the proceeds of the policy under the statutes, which exempt that amount of life insurance from the claims of creditors. Hence it is immaterial whether such exemption be claimed under section 2661 or section 9310, Revised Code 1919. We do not find it necessary to determine whether the statutory exemption of $5,000 proceeds of an insurance policy would be applicable where the policy was taken out by an insolvent debtor with intent to defraud his creditors. That question is not presented by the record; the right of the family of decedent to $5,000 of the insurance money being conceded by appellant. The only controversy is as to the $5,000 remaining in the hands of the defendant company.

[3, 4] The gist of respondent's defense is that the plaintiff, as administrator of the estate, is not entitled to this money. It is also apparent that the demurrer presents no question as to the amount of recovery; that is, whether a recovery may be had for the premiums fraudulently paid out, or for the insurance money due under the policy, except in so far as that question may be inseparably connected with the theory upon which the right to recover may be based. Respondent's contention is that, although the policy itself contains provisions under which the husband retained the right to change the beneficiary and to assign the policy, such rights were never exercised in favor of the decedent's estate, and that no privity of contract exists between the administrator and the defendant company, particularly in view of the fact that the assent of the defendant company to a change of the beneficiary or an assignment of the policy is essential under the terms of the policy. The defendant company however, admits its liability to the wife as beneficiary, and her rights to the fund having become vested by the death of the husband, the limitations contained in the policy do not affect or limit her right to assign or transfer her interest therein either in whole or in part. We do not decide at this time, however, whether the facts alleged in the complaint are sufficient to constitute a valid transfer to the administrator of her claim against the company. In the absence of insolvency and fraud on the part of the insured, the creditors of the husband could have no claim upon the proceeds of the policy, and the administrator would have no right of aciton against either

the wife or the defendant company. The action does not purport to have been brought to set aside the contract of insurance and recover the consideration paid by the fraudulent debtor, namely, the insurance premiums. The complaint does not allege that either the wife or the defendant company was party to the alleged fraud, and as to them the contract of insurance itself was and is valid, and could not be set aside.

[5] The relief demanded is a decree declaring the proceeds of the contract, in the hand of the defendant, to be a trust fund for the benefit of the creditors of the guilty party. The administrator is not a party to, or a formal assignee of, the policy. But the policy, appellant contends, was the instrumentality by means of which the fund came into defendant's possession, charged with a trust in favor of the creditors of the estate because of the alleged fraudulent intent of the insolvent debtor. We think it quite plain from the facts presented and the relief demanded in the complaint that the action was founded upon that theory.

In Lehman v. Gunn, 124 Ala. 213, 27 South. 475, 51 L. R. R. 112, 82 Am. St. Rep. 159, a case chiefly relied upon by appellant, an insolvent debtor took out a policy of life insurance on his own life, in favor of his mother and father as beneficiaries, paying the premium out of his own funds. Within a month thereafter he died. The defendant, Gunn, as administrator of the estate, through a compromise, accepted one-half of the amount of the policy in settlement. An action was brought by creditors of the decedent to subject the proceeds of the settlement in the hands of the administrator to the payment of their claims. Discussing the prinicples of law involved, the court said:

"As against existing creditors a voluntary conveyance by the debtor is in law per se fraudulent and void, without regard to the intention of the debtor, is a proposition too familiar and well settled to require citation of authorities. The nature and form of the conveyance, or the ways and means employed in bestowing the gift or donation is immaterial. It is enough if the thing given be liable to the satisfaction of the demands of creditors, to render the conveyance void. In the solution of this case some difficulty will be obviated, by first determining what it is that the debtor has conveyed or donated. It must be conceded that the benefits to be derived under the present policy by the beneficiaries named

therein proceed from the acts of the insured, who procured the policy. The policy was issued by the company for a valuable consideration. The consideration moved from the insured and not from the beneficiaries.

"It cannot be doubted that if the policy had been taken out and payable to the estate of the insured, and subsequently by him transferred as a gift to his father and mother, that such a transaction would have been void as against existing creditors. So too, though the policy be issued in favor of the father and mother, if the premiums be paid out of the funds of the debtor, will the transaction be void as against existing creditors. * * * The policy, or the insurance which it represented, was the subject-matter of the gift and not the premium. The premium is used in the purchase of the property donated, and it is in the gift of this property so purchased that the creditor complains that he has been injured. * * * In Fearn v. Ward [80 Ala. 560, 2 So. 114], this court said: 'The insurance constitutes the property purchased, and is the subject-matter of the investment. If the father be in debt, such voluntary investment is fraudulent in law as to his existing creditors, without regard to his intent, or to his circumstances and condition as to his ability to pay. In such case, the donee will be regarded as a trustee for the benefit of the creditors of the donor.' * * * It is the diminution of the fund to which the creditor had the right to look for the payment of his demand, that gives him the right to complain. * * * If the wrong and injury to the creditor be accomplished through the fraud of the debtor, actual or constructive, it is immaterial what form it assumed. Equity will deal with the facts, the substance, without regard to forms or shadows. * * * Taking the allegations of the bill as true, upon the death of Winton the insurance became a trust fund for the benefit of his creditors, and all parties dealing with such a fund with notice may be held to an accounting."

Respondent relies largely upon the case of Central National Bank v. Hume, 128 U. S. 195, 9 Sup. Ct. 41, 32 L. Ed. 370, and contends that it is decisive of the precise question presented on this appeal. We think respondent is in error. That case seems to have been decided upon its own peculiar facts. Want of evidence of fraud in the transaction appears to have been controlling. The court, commenting on that phase of the case, said

in effect, that the amounts paid for premiums on the policy were so small as to constitute no appreciable diminution of the decedent's estate, and could not have caused material injury to the creditors. In fact, the court seems to have been of the view that the premiums were paid out of funds placed by the wife's mother in the hands of the husband for the benefit of the wife, which funds Hume did, and might rightfully, and without fraudulent intent, devote to the purchase of insurance on his own life for the benefit of his wife and children. That these facts had a material bearing on the conclusion reached is apparent from the language used by the court:

"In all purely voluntary conveyances it is the fraudulent intent of the donor which vitiates. If actually insolvent, he is held to knowledge of his condition; and if the necessary consequence of his act is to hinder, delay, or defraud his creditors, within the statute, the presumption of the fraudulent intent is irrebuttable and conclusive, and inquiry into his motives is inadmissible. But the circumstances of each particular case should be considered, as in Partridge v. Gopp, 1 Eden, 163, 168; s. c. Ambler, 596, 599, where the Lord Keeper, while holding that debts must be paid before gifts are made, and debtors must be just before they are generous, admitted that 'the fraudulent intent is to be collected from the magnitude and value of the gift.' Where fraud is to be imputed, or the imputation of fraud repelled, by an examination into the circumstances under which a gift is made to those toward whom the donor is under natural obligation, the test is said, in Kiff v. Hanna, 2 Bland, 33, to be the pecuniary ability of the donor at that time to withdraw the amount of the donation from his estate without the least hazard to his creditors, or in any material degree lessening their then prospects of payment; and in considering the sufficiency of the debtor's property for the payment of debts, the probable, immediate, unavoidable, and reasonable demands for the support of the family of the donor should be taken into account and deducted, having in mind also the nature of his business and his necessary expenses. Emerson v. Bemis, 69 Ill. 541.

"This argument in the interest of creditors concedes that the debtor may rightfully preserve · his family from suffering and want. It seems to us that the same public policy which justifies

this, and recognizes the support of wife and children as a positive obligation in law as well as morals, should be extended to protect them from destitution after the debtor's death, by permitting him, not to accumulate a fund as a permanent provision, but to devote a moderate portion of his earnings to keep on foot a security for support already, or which could thereby be, lawfully obtained, at least to the extent of requiring that under such circumstances the fraudulent intent of both parties to the transaction should be made .out  And inasmuch as there is no evidence from which such intent on the part of Mrs. Hume or the insurance companies could be inferred, in our judgment none of these premiums can be recovered."

Briefly stated, Justice Fuller held that payment of the insurance premiums by the insolvent husband, if from his own funds, did not appreciably contribute to his insolvency, and if paid out of funds placed in his hands by his wife's mother for her daughter's benefit, no injury resulted to creditors and no fraud appeared; that the proceeds of the policy belonged to the wife and children as beneficiaries; that, neither the wife nor the insurance company having had knowledge of the husband's insolvency when the contract of insurance was entered into, the contract was valid and binding on all parties, and the premiums paid could not be reached and appropriated by creditors.  If it be assumed, in the absence of statutory provisions, as Justice Fuller seems to hold, that an insolvent debtor may purchase a reasonable amount of life insurance to provide for immediate needs of his wife and family in case of his death without wrongful injury to his creditors, that doctrine, we think, should have no application where a statute exempts, for a like purpose, a specific amount, as in our state, $5,000, from the proceeds of life insurance policy. But the husband may not, with intent to defraud his creditors, or voluntarily, give to his wife, to the prejudice of his creditors, either by assignment of a policy in his own favor or by naming her as a beneficiary therein, a contract of insurance in an amount in excess of this statutory provision.  And the purchase of insurance by an insolvent husband in an amount in excess of the statutory exemption, and payment therefor from his own funds with intent to hinder, delay, and defraud his creditors, is not the less a

26—Vol. 44, S. D.

voluntary gift by reason of the fact that the husband is legally bound to support his wife and children, or that they have a legal right to such support, or that they have an insurable interest in his life, or by reason of the fact that the wife had no knowledge of the insolvency or of the fraudulent intent of the husband. We are of the view that, under such circumstances, any amount of insurance thus purchased and paid for by the husband in excess of the statutory exemption, even though standing in the name of the wife, should be deemed a trust fund recoverable by the administrator of the decedent's estate, and that the insurance company defendant is not concerned in the distribution of such fund in the course of administration; that being a question which concerns alone the heirs and creditors and the wife. Whether the insurance company might interpose such a defense in an action wherein the wife, as beneficiary under the policy, was not made a party defendant, we do not decide; but it seems clear to us that where the wife is made a party defendant, as in this case, a recovery by the administrator would certainly estop the wife from thereafter making claim against the defendant company, assuming the facts to be as stated in the complaint.

The order sustaining the demurrer is reversed, and the cause remanded for further proceedings in accordance with the views herein expressed.